# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

LARRY MYERS,                 )
                               )
        Plaintiff,          )
                               )
        v.                 )     CAUSE NO.: 3:10-CV-271-TLS
                               )
TU UNITED TRAILERS OF UNITED  )
EXPRESSLINE,              )
                               )
        Defendant.      )

## OPINION AND ORDER

The Defendant, United Expressline, Inc. d/b/a United Trailers (misnamed in the Complaint as TU United Trailer of United Express Line), has moved for summary judgment on Plaintiff Larry Myers's Age Discrimination Complaint. For the reasons stated in this Opinion and Order, the Court finds that there is no genuine dispute as to any material fact and that the Defendant is entitled to judgment as a matter of law.

## BACKGROUND

On July 6, 2010, the Plaintiff sued his former employer under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (Age Discrimination Compl., ECF No. 1.) The Plaintiff alleged that the Defendant wilfully discriminated against him on the basis of his age when it terminated his employment and failed to rehire him. On August 24, the Defendant filed an Answer and Affirmative Defenses [ECF No. 11].

On June 13, 2011, the Defendant filed its Motion for Summary Judgment [ECF No. 22], Brief in Support of Motion for Summary Judgment [ECF No. 23], and Tender and Designation of Evidence [ECF No. 24]. The Defendant argues that the undisputed evidence shows that the

Plaintiff was permanently laid off for economic reasons along with thirty-six other employees, and that he was selected because his skill set was not well-suited to efficiently contribute to the curtailed workforce model under which the Defendant would be operating after the reduction in its workforce.

On July 16, the Plaintiff filed his Submission of Evidence in Opposition to Summary Judgment [ECF No. 28] and Brief in Opposition to Summary Judgment [ECF No. 29]. Included in the Plaintiff's submissions were the Declarations of Kyle Myers, Michael Huddleston, and the Plaintiff. On August 3, the Defendant moved to strike [ECF No. 30] portions of these Declarations as containing inadmissible hearsay or conclusory statements lacking a foundation of personal knowledge or specific factual support. The Defendant also filed a Reply to Plaintiff's Response to Motion for Summary Judgment [ECF No. 31]. On August 10, the Plaintiff responded to the Motion to Strike [ECF No. 32] and on August 19 the Defendant replied [ECF No. 33]. On September 19, the Plaintiff filed his Tender of Recent Authority [ECF No. 34] in which he cited a Seventh Circuit opinion for its analysis of the similarly-situated prong of the *McDonnell Douglas* prima facie analysis.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the facts supported by materials in the record show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. The motion should be granted so long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the

evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56.1(a) (stating that the movant must provide a "Statement of Material Facts" that identifies the facts that the moving party contends are not genuinely disputed). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000); N.D. Ind. L.R. 56.1(b) (directing that a  response in opposition to a motion for summary judgment must include "a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary"). According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp*., 200 F.3d 485,

491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c)(4), any affidavit or declaration "used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." On a motion for summary judgment, a court must disregard parts of an affidavit that fail to comply with this rule. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987). The following statements do not comply with the rule and should be disregarded: "(1) conclusory allegations lacking supporting evidence; (2) legal argument; (3) self-serving statements without factual support in the record; (4) inferences or opinions not grounded in observation or other first-hand experience; and (5) mere speculation or conjecture." *Heltzel v. Dutchmen Mfg., Inc.*, No. 3:06-CV-227, 2007 WL 4556735, at *4 (N.D. Ind. Dec. 20, 2007) (quotation marks and citations omitted). Although "self-serving statements in affidavits without factual support in the record carry no weight," *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (emphasis omitted), "a self-serving affidavit supported by facts in the record [can] defeat summary judgment," and the record "may include the self-serving affidavit itself, provided that the affidavit meets the usual requirements for evidence on summary

judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial," *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (quotation marks and citations omitted).

## STATEMENT OF FACTS

### A.    The 2008 Layoffs

The Defendant produces steel-framed, enclosed, cargo trailers commonly used for landscaping, construction, racing, concessions, and general cargo. When it operates at full capacity, the Defendant had two production lines for assembling trailers; one for building large trailers and the other for building small trailers. In October 2008, an economic downturn caused a decreased demand for the Defendant's product and it responded by making plans to slow trailer production. The Defendant intended to begin operating one line a day, alternating between the large and small production lines. The Defendant determined that it was also necessary to reduce its workforce by permanently laying off some of its ninety-three production employees. Todd Bontrager, the president of the Defendant company—with input from Vice President of Operations Lynn Woodiwiss regarding the number of orders the Defendant had to fulfill—decided to eliminate thirty-seven production positions. Bontrager delegated the process of selecting which specific employees would be laid off to a team of pertinent managers.

Bontrager, in his deposition, identified the managers involved in the process: Woodiwiss, Plant Manager Lester "Butch" Westphal, and Human Resources Director Jared Hochstettler. (Bontrager Dep. 8, ECF No. 28-15 (stating that the "initial discovery was done by that group of people").) Bontrager was eventually presented with a list of employees for termination, which he

approved without further inquiry. The managers of the various departments were informed of the terminations on October 30, 2008, one day before they took effect. The Plaintiff was included in the list of thirty-seven employees selected for permanent layoff.

At the time he was selected for permanent layoff, the Plaintiff worked in the Metal Department hanging side doors on large trailers. Westphal stated in his deposition that he selected the Plaintiff for termination on the basis of his "work capabilities." (Lester Westphal Dep. 9, ECF No. 24-4.) He stated that John Antil, who he described as a "swingman" who filled in hanging doors when anybody was ill, replaced the Plaintiff. Westphal believed that Antil was "[m]ore universal" because he could "hang metal, roof the trailer, put extrusion on a trailer. He could . . . do anything on a trailer that you asked him to do." (*Id.* 11–12.) Westphal acknowledged that a side door hanger was necessary for most trailers, but stated it was also necessary to put extrusion on the bottom, fender flares, and anything else that was in that station, and the Plaintiff only had a "set job of doors" which had not required him to put fenders on. (*Id.* at 12–13.) Westphal stated that the Plaintiff's capabilities with regard to fenders was not equal to other employees'.

Westphal testified that he selected employees for layoff based on his knowledge of their capabilities and what they could do for the company, and then submitted the list to Woodiwiss and Hochstettler. He contends that no one made any suggestions to him regarding which employees to choose. At the time of the layoff, Westphal had been supervising the Plaintiff for about twenty-three years, fifteen of those years occurring at the Defendant company.

The Plaintiff was not at work on October 31, 2008, but his son, who also worked at the Defendant company, brought the Plaintiff his paycheck and informed him that he had been laid

off. The following Friday, the Plaintiff went to get his final check from Hochstettler, who told him he was permanently laid off and suggested that he take his 401k out. The Defendant sent a letter to the employees who were permanently laid off, but the Plaintiff contends that he did not receive it.

**B.      Hochstettler's Role in the 2008 Layoff**

Bontrager and Woodiwiss informed Hochstettler that they were planning a fairly significant layoff and wanted his input on the steps they should take to communicate their decision to the employees. Hochstettler helped draft a letter for the Defendant to give to each employee who was selected for permanent layoff. On October 30, Hochstettler participated in a meeting with Woodiwiss, Bontrager, and Westphal. During the meeting, Westphal presented the list of employees he selected for termination. Hochstettler contends that he was not involved in the selection process and, consistent with Westphal's deposition testimony, states that he did not have any discussions with Westphal about the Plaintiff.

The Plaintiff asserts in his Declaration that after his layoff he had a conversation with Randy Snyder, the manager of the department where the Plaintiff had worked. The Plaintiff states that Snyder told him that Hochstettler fired the Plaintiff and Snyder did not have anything to do with it. (Decl. Larry Myers ¶ 12, ECF No. 28-8.) The Plaintiff appears to be relying on his recounting of Snyder's unsworn statement as evidence that Hochstettler made the decision to terminate the Plaintiff's employment. The Court cannot consider Snyder's statement, as repeated by the Plaintiff, because it is inadmissible hearsay. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (providing cases for the proposition that hearsay is inadmissible in summary

judgment proceedings and will not suffice to overcome a motion for summary judgment); *see also Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009) (stating that a party may only rely on admissible evidence to defeat a summary judgment motion). The Plaintiff argues that Snyder is an agent of the Defendant. Under Federal Rule of Evidence 801(d)(2)(D), "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" is not hearsay. "[I]n the context of employment discrimination cases, the declarant must be involved in the decision making process affecting the employment action involved" for his statement to qualify as an admission of the employer. *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 630 (7th Cir. 2006) (quotation marks omitted); *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 622 n.2 (7th Cir. 2003). Snyder has not been identified as one of the managers involved in the 2008 layoff process, and nothing in the record establishes that Snyder had personal knowledge of which member of management decided to include the Plaintiff in the layoff. *See* Fed. R. Civ. P. 56(c)(4) (requiring affidavit to be made on personal knowledge). Neither is there any evidence that the Defendant authorized Snyder to make a statement regarding the decision making process for the 2008 layoffs. *See* Rule 801(d)(2)(C) (excluding from the definition of hearsay a statement offered against a party and made by a person whom the party authorized to make a statement on the subject). The Defendant's Motion to Strike this portion of the Plaintiff's Declaration on grounds that it includes inadmissible hearsay is well taken and will be granted.[1]

The Plaintiff also asserts that he spoke to Westphal after his termination, and that

---

[1] For those portions of the Motion to Strike that address affidavit statements that are not material to the outcome of the Motion for Summary Judgment, the Court will deny the Motion to Strike as moot.

Westphal told him that Hochstettler "got rid of" the Plaintiff and that Westphal "did not have anything to do with it." (Decl. Larry Myers ¶ 8, ECF No. 28-8.) Additionally, the Plaintiff states that "[a]fter my layoff and before I went to see Randy Snyder about being called back, I went to the Options Building to talk with Butch Westphal about my job . . . Butch said 'get an attorney' . . . 'take it to the labor board' . . . 'you got screwed . . . [Hochstettler] had no reason to do it.'" (*Id.* ¶ 9 (ellipses in original).) The Defendant's position, and the record submitted to the Court, supports the conclusion that Westphal was involved in the process of selecting employees for permanent layoff. Thus, his statements are not hearsay. *See* Fed. R. Evid. 801(d)(2)(D).

However, the Plaintiff's Declaration suffers from another defect. Affidavit testimony is not admissible to create a genuine issue of material fact if it contradicts earlier deposition testimony. *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 952 (7th Cir. 2001) (excluding affidavit testimony as contradictory to deposition testimony). "As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition . . . testimony." *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996); *see also Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 759 (7th Cir. 2006); *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 488 (7th Cir. 2007) ("When a witness abandons her testimony in the face of a pending summary judgment motion, the change is often a transparent ruse designed to prolong the case; allowing the ruse to succeed would defeat summary judgment's purpose of weeding out clearly unmeritorious cases."). Therefore, the affidavit should be disregarded "unless it is demonstrable that the statement in the deposition was mistaken." *Pourghoraishi*, 449 F.3d at 759 (quoting *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532–33 (7th Cir. 1999)); *see also Beckel v. Wal-Mart Assocs. Inc.*, 301 F.3d 621, 623

(7th Cir. 2002) (holding that when an affidavit contradicts the affiant's deposition it is "entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy"). The Seventh Circuit has identified a number of scenarios that could plausibly explain a change in testimony, such as a confusing deposition question, circumstances indicating a lapse of memory, relevant new information discovered, or ambiguous or incomplete earlier testimony. *Patton*, 480 F.3d at 488. A court must determine whether the change in testimony is "plainly incredible or merely creates a credibility issue for the jury." *Id.*

At his deposition on March 29, 2011, counsel asked the Plaintiff whether he spoke to anyone at the Defendant company about his layoff other than when he went to get his last paycheck from Hochstettler. He testified that he talked to Westphal a couple times, the first time in February 2009 after his grandson relayed a message that Snyder wanted him to come in to talk about rehiring. (Pl.'s Dep. 54–55, ECF No. 28-11.) He stated that when he got there, Snyder told him that "they wasn't gonna hire back relatives," so the Plaintiff went to talk to Westphal. (*Id.* 55.) The Plaintiff testified as follows regarding his conversation with Westphal:

> Q. So, when you went to talk to Butch Westphal in February, what did you say to him?
> A. Just asked him what was going on. And he said, well, he didn't—you know, I'm not exactly sure what all was said. You know, he just said he seen what was going on down the line, you know; basically, what was going on in the future, you know.
> Q. So, you said to him you wanted to know what was going on, right?
> A. Right.
> Q. What did he say to you?
> A. I'm not exact sure. We had a conversation. We just talked. And he was over there, and he was kind of busy. So, I—we just talked a little bit, and I left. So—

(Pl.'s Dep. 56–57.) The Plaintiff stated that he did not get any resolution about being rehired, other than being told that Hochstettler would not hire him back because he had relatives working

there. (*Id.* at 57, 73–74.) Counsel followed up with questions about the second conversation:

> Q.    So, did you talk to Butch Westphal again after that occasion about your employment at United Trailers?
>
> A.    I've seen Butch quite a few times since then.
>
> Q.    And on those times when you've seen him, have you spoken to him about your employment at United Trailers?
>
> A.    Yeah. I talked to him. I asked him about it. And he said they basically didn't have any reason to get rid of me. That was at the LaGrange 4H Fairgrounds. And he said it was just a couple people in there that was getting rid of everybody, you know. So—
>
> Q.    So, that's what Butch told you, as far as you can remember?
>
> A.    Yep, as far as I can remember.

(*Id.* at 57–58.) Westphal's statements to the Plaintiff, as recounted by the Plaintiff in his deposition, are consistent with other evidence in the record and do not create material issues of fact. Obviously, the Defendant had a "reason" to terminate the Plaintiff's employment in the sense that it had a rationale for its decision, or the Plaintiff would still be working for the Defendant. But reason can also be construed to mean "cause," as it often is in the employment context. *See Orr v. Westminster Village N., Inc.*, 689 N.E.2d 712, 717 (Ind. 1997) (holding that at-will employment is "presumptively terminable at any time, with or without cause, by either party"). The Defendant does not dispute that the Plaintiff's termination was made necessary by economic conditions and not by any deficiency in his performance. That is, he was not discharged for misconduct or cause, a factor that becomes relevant to eligibility for receipt of unemployment compensation benefits. Nothing about Westphal's statement suggests an illegal reason for the Plaintiff's termination or that Westphal was not involved in the process. Westphal was under no obligation to inform the Plaintiff why he chose to retain Antil instead of the Plaintiff. Given that Westphal had worked with the Plaintiff for over twenty years, it is reasonable to infer that he attempted to soften the impact of the termination by avoiding specifics

about the decision to retain Antil instead of the Plaintiff, and by referencing a couple of unnamed people as the decision makers. Also, the Defendant does not dispute that a few members of management were responsible for the layoff decisions, or that Hochstettler enforced the anti-nepotism rule when making hiring decisions after the reduction in force. There is nothing in the Plaintiff's recounting of his conversations with Westphal that draws into question the decision making process identified by the Defendant, including that Hochstettler did not select any employees for inclusion in the reduction in force.

The Plaintiff's Declaration, signed on July 15, 2011, and filed in response to the Defendant's Motion for Summary Judgment, recounts these same conversations with Westphal but adds statements previously unmentioned in his deposition or elsewhere in the record. These additional statements go to the foundation of the Defendant's opposition to the Plaintiff's age discrimination claim: that Westphal, who the Plaintiff did not claim made any age-related comments, selected him for layoff, and that the only references to the Plaintiff's age were made by Hochstettler—an employee who had no part in selecting the Plaintiff for inclusion in the October 2008 reduction in force. Hochstettler was the only person the Plaintiff identified as making ageist comments, and he relied heavily on these comments to support his age discrimination claim. When he was asked during his deposition whether anyone ever told him that age played a part in the decision to lay him off, he responded, "Basically," and cited to Hochstettler's comments that he was too old to be working in a trailer factory and Hochstettler was going to put him in a retirement home. (Pl.'s Dep. 77–78.) Yet when he was asked during his deposition to recount the very same conversations that he now claims bring Westphal's and Hochstettler's roles in the 2008 layoff into genuine dispute, he failed to mention that Westphal

denied any involvement in selecting the Plaintiff for permanent layoff or that Hochstettler selected the Plaintiff. Not until after the Defendant filed its Motion for Summary Judgment did the Plaintiff provide his Declaration as evidence that Westphal told him that Hochstettler "got rid of" the Plaintiff and that Westphal "did not have anything to do with it." The Plaintiff does not make any attempt to explain the contradiction with his deposition testimony. Under these circumstances, the Plaintiff's change in his testimony does not create a genuine issue of fact for the jury regarding Westphal's role in selecting the Plaintiff for inclusion in the permanent layoff.

**C.      Comments by Hochstettler**

The Defendant testified in his deposition that, on twenty or more occasions during the last couple of years he worked for the Defendant, Hotchstettler made comments as he walked around the factory floor or during break time to the effect that the Plaintiff was too damn old to be working in a trailer factory and Hochstettler was going to put him in a retirement home. According to the Plaintiff, Hochstettler also "kind of made fun of [him] wearing a back brace all the time." (Pl.'s Dep. 82, ECF No. 24-2.) The Plaintiff was sixty-two years old during his last year of employment with the Defendant.

**D.      Rehiring**

Following the layoff, the Plaintiff's grandson advised him that Snyder, a group leader in the Metal Department, wanted to talk to the Plaintiff about being hired back. However, when the Plaintiff came to the facility, Snyder told him that Hochstettler was not going to hire him under a rule that prevented relatives from working at the Defendant company. The Plaintiff did not

submit an application for rehire. The Defendant had implemented a policy in 2007 that close relatives and members of the same household could not be employed within the company. The policy stated that it would apply to employees hired after January 1, 2008, but that employees hired previously were grandfathered into the clause. Both the Plaintiff's son and grandson work for the Defendant company.

## ANALYSIS

The ADEA "prohibits employers from firing workers who are 40 or older on the basis of their age." *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009). A plaintiff suing under the ADEA may establish discrimination directly or indirectly, the latter through the approach used in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003). "[W]hether a plaintiff proceeds under the direct method or indirect method of proof, the ultimate standard is the same: the plaintiff must demonstrate that the employer would not have made the adverse employment decision in question but for his membership in a protected class." *Cerutti*, 349 F.3d at 1061–62; *see also Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009) (holding that in ADEA disparate treatment cases, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision").

### A.    Direct Method of Proof

"A plaintiff proceeding under the direct method survives summary judgment by creating triable issues as to whether discrimination motivated the adverse employment action." *Nagle v.*

*Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). Under the direct method, a plaintiff can establish discriminatory intent by relying on direct or circumstantial evidence that "the decisionmaker" acted for a prohibited reason. *Rogers v. City of Chi.*, 320 F.3d 748, 753–54 (7th Cir. 2003); *see also Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (stating that the "focus of the direct method of proof . . . is not whether the evidence offered is 'direct' or 'circumstantial' but rather whether the evidence 'points directly' to a discriminatory reason for the employer's action"). Relevant circumstantial evidence includes suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other facts from which a jury can infer discriminatory intent. *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009).

According to the Plaintiff, Hochstettler's comments that the Plaintiff was too old to be working in the factory and he was going to put the Plaintiff in a retirement home provide the circumstantial evidence that he was unlawfully terminated on the basis of his age. The Plaintiff asserts that Hochstettler made similar comments on twenty occasion in the previous two years before the layoff. According to the Seventh Circuit, Hochstettler's comments raise an inference of discrimination only if they were (1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action. *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 721 (7th Cir. 2008); *see also Overly v. KeyBank Nat'l Ass'n*, 662 F.3d 856, 865 (7th Cir. 2011) (finding that a statement was not circumstantial evidence of discrimination because it was neither made around the time of any adverse employment actions, nor referenced any adverse employment actions).

Applying this standard, a reasonable fact finder could not rely on Hochstettler's

comments to infer that the Plaintiff was selected as one of the thirty-seven employees for permanent layoff because of his age. There is no indication that Hochstettler made the remarks around the time of, and in reference to, the 2008 layoffs. The Plaintiff testified that the comments occurred over the course of two years, putting their beginning point well before the decision to terminate the Plaintiff's employment. Kyle Myers, the Plaintiff's grandson, states in his Declaration that during "a break time" he was sitting with the Plaintiff when Hochstettler said "'you ready to go to the retirement home' . . . 'you still here' . . . 'should be in retirement home. . .'" (Kyle Myers Decl. ¶ 8, ECF No. 28-9 (ellipses in original).) Kyle does not put any time frame on this comment. In addition, given that the Plaintiff was a productive employee in his position hanging metal trailer doors, and Hochstettler did not have any authority to put the Plaintiff in a retirement home, the comments appear to have been made in the context of random office banter and conversational jabs. There is no evidence that Hochstettler had any serious discussions with the Plaintiff about retirement or his living arrangements, and the settings of the comments (while walking the factory floor or during breaks) were not related to discussions about an anticipated layoff that would affect a significant portion of the workforce. *See Oest v. Ill. Dep't of Corrs.*, 240 F.3d 605, 611 (7th Cir. 2001) (noting that the Seventh Circuit has considered the context in which remarks were made to be a relevant factor in determining causality). "[B]igotry, per se, is not actionable. It is actionable only if it results in injury to a plaintiff; there must be a real link between the bigotry and an adverse employment action." *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001).

The Plaintiff cites *Ray v. Forest River, Inc.*, 2010 WL 3167426 (N.D. Ind. Aug. 10, 2010), another age discrimination case filed in this district, as being "in concert" with the

circumstances of his termination. (Pl.'s Br. 16, ECF No. 29.) In *Ray*, the court denied summary judgment because the evidence, viewed in a light most favorable to the plaintiffs, suggested that the plant manager was a critical player in choosing which employees would be laid off. This plant manager had made comments, within a week after the layoff, that he selected the plaintiffs for layoff because they were too old to move around the plant. On several occasions about one month before the layoff, he began making unkind statements about the plaintiffs to a co-worker, referring to them as "old bitches" and stating that the plaintiffs were not capable of learning anything other than making valances because they were set in their ways on account of their age. He was heard saying such things as "them old bags need to go." 2009 WL 6749583, at *15. The court found that not only were the comments made by a decision maker who directly influenced the thinking of the other decision maker, but that the comments were made within a time period proximate to the layoffs, and were made directly in relation to the layoffs. *Id.* at *16.

Unlike in *Ray*, the inferences and presumptions required to construe Hochstettler's comments as evidence that the Plaintiff would not have been terminated as part of a reduction in force but for his age are not reasonable. *See Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 548 (7th Cir. 2011) (explaining that circumstantial evidence under the direct method of proof must "point directly to a discriminatory reason for the employer's action" and be evidence "from which a reasonable juror could infer intentional discrimination by the decisionmaker") (internal quotation marks omitted). The unreasonableness of relying on Hochstettler's comments to support an inference that the Plaintiff was terminated from his employment because of his age becomes even more apparent light of the fact that both Hochstettler and Westphal state that it was Westphal who decided, based on his knowledge of the skill levels of the various employees

in the plant, that the Plaintiff should be one of the thirty-seven employees selected for permanent layoff in 2008. Westphal contends that he selected the Plaintiff without input from Hochstettler, who confirms that he was not involved in selecting any specific employee for inclusion in the reduction in force. Hochstettler maintains that his role was limited to advising upper management about the process, including drafting a letter that would be issued to the terminated employees. Isolated comments of non-decision makers are stray remarks that cannot be direct evidence of discrimination. *Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 917 (7th Cir. 2007); *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 730 (7th Cir. 2004) ("Generally speaking, comments by a non-decision maker do not suffice as evidence of discriminatory intent."). *See also Martino*, 574 F.3d at 452 (holding that because the supervisor who made "oldtimer" comment to the plaintiff was not a decision maker in the defendant's reduction in force layoffs his comments were only relevant if he had "singular influence" over the decision maker and "use[d] that influence to cause the adverse employment action") (quoting *Staub v. Proctor Hosp.*, 560 F.3d 647, 651 (7th Cir. 2009)).

The Plaintiff counters the Defendant's evidence that Hochstettler was not the decision maker by pointing to Hochstettler's deposition testimony that he was familiar with the skill sets of most of the laid off workers yet did not have an opinion of the Defendant's skill sets, and to Hochstettler's general ability to hire and fire. The Defendant also asserts that an issue of fact exists regarding Hochstettler's role based on an inconsistency between Hochstettler's testimony that he did not have much to do with the decision process and the Defendant's response to the EEOC Charge and to interrogatories that indicate he was part of the team that made the layoff decision.

Nothing about Hochstettler's testimony that he was familiar with the skills of most of the laid off workers yet did not have an "opinion" of the Defendant's skills suggests that Hochstettler, and not Westphal, made the selection. As to the Defendant's interrogatory responses and EEOC response, they indicate that a team consisting of Bontrager, Woodiwiss, Westphal, and Hochstettler was involved in the layoff process. One interrogatory response provided that Westphal participated in the layoff decisions "because of his personal knowledge of the jobs and workers." (Interrog. Resp. 1.c, ECF No. 28-3.) With respect to Hochstettler's role, the Defendant's interrogatory response referenced its previous response concerning Westphal and added that Hochstettler "actually notified employees of decisions." (*Id.* 1.d.) When counsel for the Plaintiff questioned Hochstettler about his role in the decision making process in light of the EEOC response that a management team consisting of Bontrager, Woodiwiss, Westphal, and Hochstettler made the decision to lay off the Defendant, he stated that "as far as the decision process, I didn't have a whole lot to do with the decision process. . . . I had more to do with creating the letter" and with advising management of the process to follow. (Hochstettler Dep. 27–28; ECF No. 28-13.) This is not an inconsistency that creates a genuine issue of material fact, but a clarification. Hochstettler was involved in the process, but there is no evidence to suggest that he was involved in the manner argued by the Plaintiff, even if he was generally aware of employees' skill sets. Finally, the fact that Hochstettler, as the Director of Human Resources, had the authority in general to hire and fire does not speak to or refute his specific role in the 2008 reduction in force and termination of the employment of thirty-seven production employees.

As an alternative argument, the Plaintiff argues that Westphal acted as Hochstettler's

cat's paw when he selected the Plaintiff as a candidate for the reduction in workforce. *See*

*Lindsey v. Walgreen Co.*, 615 F.3d 873, 875 (7th Cir. 2010) ("The term 'cat's paw' refers to an

unbiased decisionmaker who is being used as a tool by a biased employee."). Although the Court

does not believe that Hochstettler's comments are sufficient to create an inference that the

Plaintiff was terminated because of his age, for the sake of completeness it will address the cat's

paw argument.

 The only evidence rationally related to a cat's paw argument comes from the Declaration

of Mike Huddleston. Huddleston states that Westphal did not ask him for his opinion about who

should be laid off in 2008, even though for past layoffs Westphal had asked Huddleston to

recommend production workers. Huddleston asserts that he would not have recommended the

Plaintiff for permanent layoff in October 2008, but would have instead recommended Antil.

Huddleston provides his opinion of Hochstettler's work when he was on the production floor

(not good), and submits that after Hochstettler became the Director of Human Resources,

Hochstettler made hiring and firing decisions and Huddleston and Westphal "had no real input

into who was hired or fired." (Decl. Michael Huddleston ¶ 12, ECF No. 28-10.) Huddleston

concludes: "Based on my overall experience with [Westphal] and [the Plaintiff] and with

[Hochstettler] when he was a production worker and after he became management HR, Jared

Hochstettler influenced [Westphal] to pick [the Plaintiff] for the October 2008 layoff." (*Id.* ¶ 13.)

 Before addressing the merits of the Plaintiff's cat's paw argument, the Court first notes

that it has arrived at its understanding that the Plaintiff is raising such an argument by piecing

together various portions of his Brief in Opposition to Summary Judgment. In the introduction,

the Plaintiff asserts that sufficient evidence exists to permit a jury to infer Hochstettler's

"mendacity" and that he "was a decisionmaker or was a decisionmaker with a cat's paw." (Pl.'s Br. 1, ECF No. 29.) In the Plaintiff's Statement of Disputed Material Facts, he responds to the Defendant's assertion that Westphal selected the Plaintiff for layoff because he lacked a diverse skill set with statements from Huddleston's Declaration, including the statement that Westphal and Huddleston "had no real input in to who was hired or fired after [Hochstettler] became HR." (Curiously, the Plaintiff does not include in his Statement of Disputed Facts or analysis Huddleston's conclusion that Hochstettler influenced Westphal to pick the Plaintiff for the 2008 layoff.) The Plaintiff again mentions cat's paw in response to the Defendant's statement that Hochstettler did not determine which employees were to be laid off on October 31, 2008, and did not participate in recommending any employees. The Plaintiff references cat's paw, however, only to clarify that a discussion of cat's paw is not necessary to deny summary judgment because the evidence already supports an inference that Hochstettler was a decision maker. (Pl.'s Br. 16 (citing *Ray*, 2010 WL 3167426).)

With respect to cat's paw liability, the Seventh Circuit has recognized that a decision maker is not required

> to be a paragon of independence. It is enough that the decision-maker "is not wholly dependent on a single source of information" and conducts her "own investigation into the facts relevant to the decision." To require much more than that would be to ignore the realities of the workplace. Decisionmakers usually have to rely on others' opinions to some extent because they are removed from the underlying situation. But to be a cat's paw requires more; true to the fable, it requires a blind reliance, the stuff of "singular influence."

*Staub*, 560 F.3d at 659 (quoting *Brewer*, 479 F.3d at 918) (citations omitted). Thus, even if Huddleston is correct that Hochstettler "influenced" Westphal's choice, his statements would not establish "singular influence." In any event, Huddleston's Declaration is insufficient to support

any level of influence by Hochstettler over Westphal's decision. Huddleston presents his conclusion as one that is based on his experience with Westphal, the Plaintiff, and Hochstettler but does not connect these observations to the selection process used in October 2008. Huddleston disagrees that Antil was a better choice to retain, but that decision was admittedly not delegated to Huddleston and disagreement about the relative skills of retained and laid off workers does not point to Hochstettler as the decision maker nor suggest that age was a determining factor. Just because Huddleston would have selected a different employee does not mean that Westphal did not honestly hold a different opinion about the relative contributions of the Plaintiff and Antil. Whether Hochstettler was good at his production employee job also has no bearing on the October 2008 layoff decisions. Huddleston offers his conclusion based on Hochstettler's role in hiring and firing before the 2008 layoffs, but admits that he was not involved in the layoff selection process. His conclusion is based on an inference supported only by speculation and conjecture, which is insufficient to create a triable issue. *Petts*, 534 F.3d at 720–21. *Cf. Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (rejecting argument that a former employee's long tenure qualified him to make the assertions contained in his affidavit where he failed to recount factual instances based on personal knowledge that would support allegations about an employer's behavior).

The Defendant has moved to strike Huddleston's conclusion on grounds that it lacks a necessary personal knowledge foundation and constitutes inadmissible speculation. The Plaintiff cites Federal Rule of Evidence 701 as grounds for allowing Huddleston's opinion, but his assertions are not proper Rule 701 opinion statements, which "most often take[ ] the form of a summary of first-hand sensory observations." *United States v. Conn.*, 297 F.3d 548, 554 (7th Cir.

2002). The Defendant's Motion to Strike is granted with respect to paragraph 13 of Huddleston's Declaration.

Neither can the Plaintiff establish that Hochstettler influenced Westphal's decision by showing that Hochstettler made offensive comments to the Plaintiff about his age. *Lindsey*, 615 F.3d at 876 (holding that cat's paw theory was not established when the plaintiff failed to show that information a supervisor provided to the decision maker was biased and instead cited to inappropriate remarks the supervisor made about her age on other occasions). The Plaintiff's cat's paw theory is without merit and does not create a triable issue of fact.

Inserted in the Plaintiff's presentation of the circumstantial evidence that he contends supports an inference of discrimination, the Plaintiff argues that the Defendant's explanation for selecting the Plaintiff for termination over John Antil is a "red herring" because they both hung side doors and 90% of trailers need side doors. (Pl.'s Br. 29.) The unremarkable proposition contained in this argument is that the Defendant still needed the Plaintiff's job responsibilities fulfilled, a fact that the Defendant has never disputed. At no time has the Defendant suggested that employees would no longer be hanging side doors. Implicit in Westphal's deposition testimony and the Defendant's assertion that retained employees would be required to have more universal skills is the acknowledgment that, even if an employee mostly hung doors, he or she would also be called upon to perform other duties.

None of the evidence presented by the Plaintiff creates a genuine issue of material fact as to whether age was the deciding factor for including the Plaintiff in the group of employees for permanent layoff.

**B.** **Indirect Method of Proof**

The Plaintiff also invokes the indirect method of proving unlawful discrimination. Under this method of proof, the Plaintiff must first demonstrate a prima facie case of age discrimination. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). If he establishes a prima facie case, the burden of production then shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for his termination. *Id.* If the Defendant offers such a reason, the burden returns to the Plaintiff to prove that the proffered reason is a pretext for age discrimination. *Id.* at 693.

It is undisputed in the record before the Court that the Plaintiff's discharge from his employment on October 31, 2008, came about as the Defendant reduced its work force in response to an economic downturn and reduced demand for its product. Likewise, there is no dispute that the Defendant consolidated the duties of its remaining employees. A traditional reduction in force occurs when an employer decides to permanently eliminate multiple positions from its workforce, allegedly for economic reasons. *Michas*, 209 F.3d at 693; *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000). In the traditional RIF, the terminated employee establishes a prima facie case of age discrimination where he shows that (1) he was over the age of forty; (2) he performed his job according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees at least ten years younger were treated more favorably by the employer. *Filar v. Bd. of Educ. of the City of Chi.*, 526 F.3d 1054, 1060 (7th Cir. 2008) (citing *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750–51 (7th Cir. 2006)). The Seventh Circuit has modified the fourth prong of the prima facie case "where the dismissed employee's duties are absorbed by another employee or employees

rather than eliminated." *Petts*, 534 F.3d at 725. This so-called mini-RIF is distinguishable from a true RIF where the plaintiff's position is eliminated entirely and will not be refilled. *See Filar*, 526 F.3d at 1060; *Bellaver*, 200 F.3d at 495 ("The point of the mini-RIF, unlike a true RIF, is that the job really was not eliminated at all; because the fired employee's duties were absorbed by others, they were effectively 'replaced,' not eliminated."). "[T]he determinative factor in deciding whether the mini-RIF variation applies is whether the discharged employee's duties were absorbed by an existing employee or eliminated, not the number of employees let go." *Petts*, 534 F.3d at 725; *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1012 n.5 (7th Cir. 2000) ("For purposes of deciding the proper prima facie case requirements to apply, our inquiry is dependent not on the number of employees terminated, but 'on whether [the employer] still needed [the plaintiff's] job responsibilities to be performed.'") (quoting *Michas*, 209 F.3d at 694). The Plaintiff in a mini-RIF case need not make a factual showing that similarly situated employees were treated better, but must instead show that his duties were absorbed by an employee outside the protected class. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 492 (7th Cir. 2007); *Michas*, 209 F.3d at 693.

Because the Plaintiff's job of hanging side doors on trailers was absorbed by another employee, the layoff in this case is best categorized as a mini-RIF.

1.      *Prima Facie Case*

The Defendant does not dispute that the Plaintiff was in a protected class with respect to his age, 62 years, that he suffered an adverse employment action when he was laid off, or that he was meeting his employer's legitimate expectations. The Plaintiff's duties hanging side doors

were absorbed by John Antil, age 37. The Plaintiff has thus satisfied the elements of a prima facie case of age discrimination.

2.      *Nondiscriminatory Reason*

The Defendant has articulated a legitimate, nondiscriminatory reason for selecting the Plaintiff for permanent layoff. The Defendant's decreased demand for its product necessitated cutting production and alternating between the two production lines that previously operated simultaneously. Westphal testified that he believed Antil's skills were more universal than the Plaintiff's.

3.      *Pretext*

The Plaintiff argues that a jury is not required to believe the Defendant's stated reason for selecting him for termination over Antil. He argues that "universality was the red herring . . . because [the Plaintiff] was replaced by John Antil who hung side doors just like [the Plaintiff] and 90% of the trailers needed side doors. [The Plaintiff's] performance at the side door position was not questioned, disciplined, or negatively compared to his substantially younger replacements." (Pl.'s Br. 24, ECF No. 29 (ellipses in original).)

"The only concern in reviewing an employer's reasons for termination is the honesty of the employer's beliefs." *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 323 (7th Cir. 2003). "To show pretext in a RIF case, an employee must establish that an improper motive tipped the balance in favor of discharge or that the employer did not honestly believe in the reasons it gave for firing him." *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 574

(7th Cir. 2003) (quoting *Krchnavy v. Limagrain Genetics Corp.* 294 F.3d 871, 876 (7th Cir. 2002)) (quotation marks omitted); *see also Paluck*, 221 F.3d at 1012–13 ("Even if the reduction was otherwise bona fide, a plaintiff may show pretext by demonstrating that the specific reasons given for including her in the reduction were pretextual."). "Pretext means a dishonest explanation, a lie rather than an oddity or an error. Pretext is more than a mistake on the part of the employer; it is a phony excuse. Showing pretext requires proof that the defendant's explanation is unworthy of credence." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008) (citations, brackets, and quotation marks omitted); *see also Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000) (stating that even if an employer's reason for terminating an employee is "mistaken, ill considered or foolish," pretext has not been shown as long as the employer "honestly believed those reasons").

The Plaintiff has not presented evidence that Westphal did not believe his own evaluation of the comparative skills of the Plaintiff and Antil. The Plaintiff's argument that his performance installing side doors was never questioned or disciplined ignores the Seventh Circuit's admonition that courts "deal with small gradations, with an employer's subjective comparison of one employee to another, and it is incumbent upon [the courts] to remember that what is at issue is not the wisdom of an employer's decision, but the genuineness of the employer's motives." *Rummery v. Ill. Bell Tele. Co.*, 250 F.3d 553, 557 (7th Cir. 2001) (quoting *Testerman v. EDS Tech. Prods. Corp.*, 98 F.3d 297, 304 (7th Cir. 1996)). Even if the Plaintiff's performance was satisfactory, it does not refute the Defendant's belief that Antil's skills were more universal. *See Balderston*, 328 F.3d at 324 (holding that the plaintiff did not demonstrate pretext when there was no evidence to show that the employer "did not honestly believe [it] was dismissing a poorer

performing, less suitable" employee in a RIF).

If the Plaintiff's argument that most trailers still required side doors to be hung is intended to question whether Antil would actually be required to perform other jobs, and thus question whether universality was a legitimate requirement (the Plaintiff does not clearly articulate his theory), the argument is not sufficient to establish pretext. First, the Plaintiff has not designated any competent proof that, after October 31, 2008, Antil did not perform a wider range of duties than the Plaintiff previously performed when he hung side doors on the large trailer production line. In any event, "arguing about the accuracy of the employer's assessment is a distraction because the question is not whether the employer's reasons for a decision are '*right* but whether the employer's description of its reasons is *honest*.'" *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (quoting *Gustovich v. AT & T Commc'ns, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992)) (internal citation omitted). It is not the Court's role "to question the wisdom of a company's decisions on how to run its business, only to assure that such decisions are not intended to provide cover for illegal discrimination." *Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946–47 (7th Cir. 2006). The Plaintiff has not pointed to any evidence that would suggest Westphal, or any other decision maker, did not honestly believe that versatility was a legitimate factor for retention or otherwise lied about the reasons given for selecting the Plaintiff for permanent layoff.

The Plaintiff has not produced evidence from which a rational jury could conclude that the Defendant's decision to lay him off as part of a RIF was the result of intentional age discrimination.

**C.      Rehiring Decision**

The Defendant designates evidence that the Plaintiff did not submit an application for rehire but spoke to the Metal Department group leader (Snyder) and was advised that he could not be rehired because he had relatives working for the Defendant, which was a reference to a policy implemented by the Defendant in 2007 and applicable to employees hired after January 1, 2008. Employees hired before 2008 were considered grandfathered with respect to the policy. The Plaintiff's son and grandson both worked at the Defendant company.

The Plaintiff responds to this evidence in his Statement of Disputed Material Facts by agreeing that it is partially accurate, but adding that Snyder and Westphal told the Plaintiff that Hochstettler said the rule against hiring relatives applied to the Plaintiff, and by disputing that the policy dictated that he would lose his grandfathered status after a layoff. However, nowhere in the analysis section of his Brief in Opposition to Summary Judgment does the Plaintiff attempt to articulate a claim under the ADEA for the Defendant's failure to rehire him. The district court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). In any event, the Plaintiff's assertions do not change the fact that he did not submit an application for rehire regardless of the reason. Even if the Plaintiff had submitted an application, he does not present any evidence that creates an issue of fact concerning the policy against hiring relatives of current employees. Although he disagrees with the Defendant's interpretation of its own policy, this disagreement is insufficient under any method of proof to create an issue of fact whether the real reason for not hiring him after the layoff was his age. Neither the argument of counsel, nor the Plaintiff's subjective beliefs, are sufficient to create an issue of fact to defeat a motion for summary judgment. *See Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th

Cir. 2002) ("[I]t is universally known that statements of attorneys are not evidence."); *Uhl v. Zalk Josephs Fabricators, Inc.,* 121 F.3d 1133, 1137 (7th Cir. 1997) ("Facts, not an employee's perceptions and feelings, are required to support a discrimination claim."). As indicated above, courts do not concern themselves with the wisdom or correctness of an employer's decision; instead they examine the honesty with which the belief is held. *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006); *see also Motley v. Tractor Supply Co.*, 32 F. Supp. 2d 1026, 1039 (S.D. Ind. 1998) ("An employer has the right to interpret and apply its own policies according to its business needs, as long as it does not discriminate based on protected characteristics."). Summary judgment is the moment in a lawsuit when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1111 (7th Cir. 2004). The Plaintiff has not presented evidence to support his claim of age discrimination and the Defendant is entitled to judgment as a matter of law.

**CONCLUSION**

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 22], and GRANTS IN PART and DENIES IN PART AS MOOT the Defendant's Motion to Strike [ECF No. 30]. The Clerk will enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on January 19, 2012.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION